Filed 7/12/13  Majlessi v. Parman CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ARDESHIR MAJLESSI, | B241063 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC101284) |
| v. | |
| MARYAM PARMAN et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Soussan Bruguera, Judge.  Reversed, with directions.

Law Office of Gerald Philip Peters and Gerald P. Peters for Plaintiff and Appellant.

Law Offices of Henry Yekikian and Henry Yekikian for Defendants and Respondents.

_____

Plaintiff and appellant Ardeshir Majlessi appeals a judgment entered in favor of defendants and respondents Maryam Parman, Mitra Parman, The Parman Law Group, Inc., Mark Steven Algorri, Ernest P. Algorri and Dewitt Algorri & Algorri (defendants)[1] following an order granting defendants' motion for summary judgment or, in the alternative, summary adjudication of causes of action (MSJ). We reverse the judgment.

Plaintiff is an attorney who represented Marvin Vindel in a personal injury action against third parties. At Vindel's request, defendants replaced plaintiff as counsel in the personal injury action. Vindel and defendants subsequently received a multimillion dollar settlement payment but did not honor plaintiff's alleged lien for attorney fees.

The trial court ruled that plaintiff could not prevail on any of his causes of action as a matter of law. At the heart of the court's decision were its findings that plaintiff and Vindel did not have a contractual relationship. We conclude that there is a triable issue of material fact as to whether Vindel executed a retainer agreement. The trial court therefore erroneously granted defendants summary judgment.

We also conclude, however, that the trial court correctly granted defendants summary adjudication of plaintiff's breach of fiduciary duty, conversion, intentional interference with contractual relations and intentional interference with prospective economic advantage causes of action. Plaintiff cannot prevail on his breach of fiduciary duty cause of action because he did not have a fiduciary relationship with defendants. Plaintiff cannot prevail on his conversion cause of action because defendants did not wrongfully take or dispose of a specific, identifiable sum of money. Plaintiff cannot prevail on his intentional interference causes of action because Vindel had an absolute right to terminate his contract with plaintiff. Accordingly, defendants are entitled to summary adjudication on these causes of action even assuming Vindel executed the retainer agreement.

---

[1]     Plaintiff sued other defendants in this action who are not respondents on appeal. We shall refer to "defendants" as the respondents listed here.

2

# FACTUAL AND PROCEDURAL BACKGROUND[2]

On or about October 17, 2004, Marvin Vindel sustained severe injuries in an automobile accident. He was the passenger of a taxi cab that drove off a freeway embankment.

On October 21, 2004, while Vindel was a patient in Los Angeles County USC Medical Center, plaintiff met Vindel and Vindel's mother, Iris Del Carmen Moreno. Plaintiff contends that because Vindel was "incapacitated" at the time, Moreno signed a retainer agreement (first retainer agreement) on Vindel's behalf. The signature for the client in the first retainer agreement, however, indicates that the document was signed by "Marvin Vindel." Although plaintiff contends that Moreno was Vindel's "representative," the first retainer agreement does not indicate that Moreno signed it on Vindel's behalf or set forth her capacity or authority to do so. Indeed, the agreement does not mention Moreno's name anywhere.

The first retainer agreement provided that plaintiff would represent Vindel in connection with the injuries he sustained in the October 17, 2004, accident. The agreement stated that plaintiff would recover one-third of plaintiff's gross recovery, if any, by settlement before a lawsuit is filed and one-half of plaintiff's gross recovery, if any, after a lawsuit is filed. The agreement also included a provision granting plaintiff a lien on Vindel's claims.

Plaintiff contends that on December 1, 2004, Vindel executed another retainer agreement (second retainer agreement). The parties vigorously dispute whether Vindel did so. We shall discuss the facts concerning this dispute in detail *post*.

Under the second retainer agreement, plaintiff's pre-lawsuit fee was reduced from one-third of Vindel's gross recovery to 22 percent. Otherwise, the second retainer agreement contains virtually all of the same material provisions as the first retainer agreement, including an attorney's lien clause.

---

[2]    We shall state the facts in a light most favorable to plaintiff and resolve any evidentiary doubts or ambiguities in his favor. (*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 388, fn. 1 (*PCO*).)

In August or early September 2005, plaintiff called Vindel and advised him he had settled his claim against the taxi cab company for $100,000. Although Vindel initially balked at resolving his claim for that amount, he eventually agreed to the settlement. Plaintiff recovered a $22,000 fee from the settlement payment.

On October 28, 2005, plaintiff filed a lawsuit on behalf of Vindel against the State of California, Department of Transportation (Caltrans). In early 2006, Vindel contacted Maryam Parman's office regarding his suit against Caltrans. According to Vindel, Parman's office did not solicit him directly or indirectly.[3] In January 2006, Vindel and Maryam Parman signed a substitution of attorney form, substituting Parman's firm for plaintiff's firm in the lawsuit against Caltrans.

On February 27, 2006, Maryam Parman sent a letter to plaintiff advising him that her office had been retained to represent Vindel. In this letter, Parman stated: "An attorney has the right to recover costs, advances and the reasonable value of services performed if there has only been partial performance of the attorney's obligation under the attorney/client agreement. We fully intend to honor your previous agreement provided that your work has some 'pro rata' value to the entire services that are ultimately expended on this matter."

---

[3]     Plaintiff contends that defendants improperly solicited Vindel in violation of Rule 1-400 of the State Bar Rules of Professional Conduct. In his declaration in opposition to the MSJ, plaintiff stated, inter alia, that Vindel told him "he had been contacted by the Parmans." Defendants objected to this statement and similar statements in plaintiff's declaration on the grounds that they constituted inadmissible hearsay and were an improper disclosure of attorney-client communications. We conclude that the trial court correctly sustained these objections. (See Evid. Code, § 952, 1200.)

Plaintiff argues that Vindel waived the attorney-client privilege because he made statements in his declaration in support of the MSJ regarding his communications with Maryam Parman's office. We disagree. Vindel did not disclose a significant part of his communications with Parman's firm regarding his decision to obtain new counsel. (See Evid. Code, § 912.)

4

On March 5, 2006, plaintiff signed the substitution of attorney form. Shortly thereafter, Parman's office obtained plaintiff's file regarding the Caltrans lawsuit. Plaintiff also sent a letter to Parman dated March 7, 2006, stating that his office was "claiming a lien for attorney fees and costs related to the handling of" Vindel's suit.

After Vindel retained Parman's firm, he agreed to also retain DeWitt Algorri & Algorri as trial counsel. Ultimately, the Caltrans case went to a jury trial. The jury returned a verdict of 50 percent liability against Caltrans. Before a judgment was entered, however, Caltrans agreed to settle the case for $4.75 million.

On February 21, 2008, plaintiff learned about the settlement. Over the next few months plaintiff wrote letters to Caltrans and defendants requesting that his firm's name be included on any settlement check and that his attorney's lien be honored. Defendants and Vindel, however, did not make any payment to plaintiff out of the $4.75 million they received from Caltrans.

On January 9, 2009, plaintiff commenced this action by filing a complaint in superior court against defendants. Plaintiff filed his first amended complaint (FAC), the operative pleading, on June 24, 2009. The FAC set forth causes of action for (1) breach of implied contract, (2) money due on implied contract, (3) money had and received, (4) breach of fiduciary duty, (5) conversion, (6) intentional interference with contractual relationship, (7) intentional interference with prospective economic advantage, and (8) unjust enrichment. In the FAC, plaintiff alleged that he was entitled to recover $2.375 million, i.e. 50 percent of the settlement amount, plus interest.

Defendants filed the MSJ on September 10, 2010. In this motion, defendants sought an order granting them summary judgment or, alternatively, summary adjudication of each of plaintiff's causes of action.

The initial hearing for the motion was scheduled on November 29, 2010. At plaintiff's request, the hearing was continued four times, and the court held additional hearings on March 30, 2011, September 22, 2011, October 19, 2011 and February 2,

2012.  Each of these continuances were granted on the ground that plaintiff needed additional time to obtain discovery from defendants and third parties.[4]

At the February 2, 2012, hearing, the court announced that its tentative ruling was to grant the motion.  The court orally announced that it sustained virtually all of defendants' objections to plaintiff's evidence.[5]  On February 7, 2012, the court entered an order granting the MSJ.  The order stated, inter alia, that "[t]here never existed a 'contractual relationship' between Plaintiff and Mr. Vindel and Plaintiff never had a valid lien agreement."

The court entered judgment in favor of defendants on March 29, 2012.  Plaintiff filed a timely notice of appeal.

## ISSUE

The issue on appeal is whether the trial court erroneously granted defendants' MSJ.

## DISCUSSION

1.      *Standard of Review for Motions for Summary Judgment or Summary Adjudication of Causes of Action*

A motion for summary judgment or summary adjudication of a cause of action is properly granted when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subds. (c) & (f)(1).)  A defendant moving for summary judgment or summary adjudication bears the burden of persuasion that one or more elements of the cause of action in question cannot be established or that there is a complete defense thereto.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*); Code Civ. Proc., § 437c, subds. (o) & (p)(2).)  The moving defendant also bears the initial burden of producing evidence to make a prima

---

[4]      The parties engaged in numerous disputes regarding defendants' responses to plaintiff's discovery requests.

[5]      The court stated:  "I went and ruled on each objection one by one and maybe one or two may be overruled, but I think that the declarations should be objected to and the objection is sustained, almost wholesale."

facie showing of the nonexistence of any triable issue of material fact. (*Aguilar*, at p. 850.) If the defendant meets his or her burden of production, the burden shifts to the plaintiff to produce evidence showing the existence of a triable issue of material fact. (*Ibid*.) "We liberally construe the evidence in support of the party opposing summary judgment [or summary adjudication] and resolve doubts concerning the evidence in favor of that party." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

This court reviews a motion for summary judgment or summary adjudication de novo. (*Conejo Wellness Center, Inc. v. City of Agoura Hills* (2013) 214 Cal.App.4th 1534, 1548.) " 'We apply the same three-step analysis required of the trial court. We begin by identifying the issues framed by the pleadings since it is these allegations to which the motion must respond. We then determine whether the moving party's showing has established facts which justify a judgment in movant's favor. When a summary judgment motion prima facie justifies a judgment, the final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue.' " (*Gutierrez v. Girardi* (2011) 194 Cal.App.4th 925, 931-932.)

2.     *The Trial Court's Rulings on Defendants' Objections*

Before applying the three-step analysis of the MSJ, we shall first discuss defendants' evidentiary objections. Defendants filed hundreds of objections to the declarations of plaintiff and his former legal assistant Anna Bolanos. Many of the objections were to inconsequential statements in the declarations or were clearly unmeritorious.

For example, in his discussion regarding discovery disputes he had with defendants, plaintiff stated that at one point defendant Ernest Algorri called him "and stated that all the requested documents are privileged and that 'we are not sending you shit.' " (Bold emphasis omitted.) Defendants objected on the grounds that this statement was inadmissible hearsay and improper character evidence. The statement, however, clearly fell within an exception to the hearsay rule, namely an admission by a party. (Evid. Code, § 1220.) It also was by no means inadmissible character evidence because it was not offered to prove Mr. Algorri's character; it was offered to show how he declined

7

to provide discovery responses on a specific occasion. This evidence was marginally relevant to plaintiff's argument that the trial court should continue the hearing on the MSJ to allow him to conduct additional discovery.

Our Supreme Court has strongly disapproved of litigants filing an excessive number of objections, as defendants did here. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532 (*Reid*).) The court has also encouraged the parties to "specify the evidentiary objections they consider important, so that the court can focus its rulings on evidentiary matters that are critical in resolving the summary judgment motion." (*Id.* at p. 533.)

Unfortunately, defendants did not identify for the trial court the objections that were truly important to their motion. Plaintiff also made the trial court's task more difficult by failing to provide written or oral argument regarding the merits of the vast majority of defendants' objections. The trial court, in turn, did not provide any specific reasons for its ruling sustaining virtually all of defendants' objections.

### a. *Standard of Review*

Many published cases hold that an appellate court reviews a trial court's evidentiary rulings on summary judgment for abuse of discretion. (See, e.g., *Costa Serena Owners Coalition v. Costa Serena Architectural Com.* (2009) 175 Cal.App.4th 1175, 1202.) In *Reid,* however, the California Supreme Court expressly left open the question of whether a de novo standard or an abuse of discretion standard applies to evidentiary rulings in connection with summary judgment motions. (*Reid*, *supra*, 50 Cal.4th at p. 535; see also *Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1114.) We need not resolve this issue because our conclusions regarding particular objections would be the same regardless of which standard we apply.

We cannot reverse the judgment based on the erroneous exclusion of evidence unless plaintiff meets his burden of showing the court's error resulted in a miscarriage of justice. (*Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1480 (*Zhou*); Evid. Code, § 354.) A miscarriage of justice results when the outcome of the judgment is affected by legal error. (*Zhou*, at p. 1480; *People ex rel. Curtis v. Peters* (1983) 143 Cal.App.3d 597, 603.)

b. *Plaintiff's General Arguments Regarding Objections*

Plaintiff makes general arguments in his briefs regarding categories of defendants' objections—the attorney-client privilege, hearsay, lack of personal knowledge, relevance, lack of foundation, improper legal conclusion, character evidence and inadmissible oral and secondary evidence—without applying his arguments to specific objections. These arguments are clearly insufficient to meet plaintiff's burden of showing the trial court committed reversible error by sustaining objections.

c. *Plaintiff's Arguments Regarding Specific Objections*

The same is true with most of plaintiff's arguments regarding defendants' specific objections to his declaration and the declaration of Ana Bolanos. Although plaintiff provides some analysis of why he contends certain objections were erroneously sustained, he generally does not explain why the alleged errors resulted in a miscarriage of justice. Accordingly, with one notable exception, plaintiff did not meet his burden of showing reversible error.

d. *Paragraph 5 of the Declaration of Ana Bolanos*

In paragraph 5 of her declaration in opposition to the MSJ, plaintiff's former legal assistant, Ana Bolanos, stated: "On December 1, 2004, I went to the Rancho Los Amigos Rehabilitation Center in Downey and met with Marvin Vindel. Mr. Vindel and I negotiated the terms of a retainer agreement [the second retainer agreement], which reduced the attorney's fee payable to the Law Offices of Majlessi & Associates. *Vindel signed the retainer agreement with and* [sic] *the Law Offices of Majlessi & Associates while he sat in his wheelchair.* I gave him a copy of the retainer agreement. A true and correct copy of the retainer agreement signed by Vindel is attached as Exhibit 'B'." (Italics added.) Attached as Exhibit B to Bolanos's declaration was the second retainer agreement we discussed *ante*.

Defendants objected to the italicized sentence in paragraph 5 on two grounds. The first was that the testimony constituted inadmissible hearsay. We reject this argument. Hearsay evidence is "evidence of a *statement* that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter

9

*stated.*" (Evid. Code, § 1200, subd. (a), italics added.) Bolanos testified about Vindel's act of signing a retainer agreement, not any statement Vindel may have made.

Defendants also objected to the italicized sentence on the ground that Bolanos did not provide a sufficient foundation for her personal knowledge of the facts she testified about. (See Evid. Code, § 702.) This objection is without merit. Bolanos stated that she met with Vindel at a hospital and that she negotiated the terms of the second retainer agreement with him. This was sufficient foundation, especially at the summary judgment stage, to establish her personal knowledge of Vindel's act of signing the second retainer agreement. The trial court's ruling sustaining defendants' objections therefore was erroneous.

The ruling also resulted in a miscarriage of justice. As we shall explain, if we consider paragraph 5 of Bolanos's declaration, there is a triable issue of material fact regarding whether Vindel executed the second retainer agreement.

Defendants argue that plaintiff waived his right to challenge the trial court's rulings on their objections to paragraph 5 of Bolanos's declaration because he did not make an adequate offer of proof in the trial court. This argument is based on Evidence Code section 354, subdivision (a), which provides that a judgment cannot be reversed by reason of the erroneous exclusion of evidence unless "[t]he substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means."

We reject defendants' argument. In his opposition to the MSJ, plaintiff argued that "the existence of a signed retainer agreement is in dispute. In her declaration, Ana Bolanos, Majlessi's legal assistant, declares she saw Vindel sign the December 4 [*sic*], 2004 retainer agreement. (Bolanos declaration, ¶ 5.)" This argument was sufficient to advise the trial court of the substance, purpose and relevance of paragraph 5 of Bolanos's declaration.

3. *There is a Triable Issue of Material Fact Regarding Whether Vindel Executed the Second Retainer Agreement*

Each of the causes of action in the FAC rest on the allegations that plaintiff had an attorney-client relationship with Vindel pursuant to the two retainer agreements, and that the agreements created an attorney's lien[6] on the settlement proceeds. Defendants argued below that these underlying allegations are simply not true because Vindel never executed the retainer agreements. In support of this argument defendants filed a declaration by Marvin Vindel. Vindel stated that he never signed the two retainer agreements, he was never given a copy of either agreement, and he did not authorize any person to sign the agreements on his behalf. He further stated that he did not know how plaintiff became his attorney.

Based on Vindel's declaration the trial court found that the two retainer agreements "must have been fabricated." The court further found that "[t]here never existed a 'contractual relationship' between Plaintiff and Mr. Vindel and Plaintiff never had a valid lien agreement."

We agree with the trial court that the facts in Vindel's declaration, if true, were sufficient to establish defendants' right to summary judgment. The burden thus shifted to plaintiff to produce evidence sufficient to raise a triable issue of material fact.

Plaintiff did not meet his burden with respect to the first retainer agreement. It is undisputed that Vindel did not sign the first retainer agreement and that he was not given a copy of the document.[7] Plaintiff contends that Vindel's mother, Moreno, signed the agreement on Vindel's behalf. But plaintiff presented no evidence that Vindel authorized Moreno to do so or that Moreno otherwise had the authority to act on Vindel's behalf.

---

[6] Defendants do not dispute that the retainer agreements, if enforceable, created an attorney's lien. (See *Little v. Amber Hotel Co.* (2012) 202 Cal.App.4th 280, 290-291 [an attorney's lien is an equitable lien ordinarily created by contract].)

[7] Although plaintiff presented evidence that Vindel's mother was given a copy of the first retainer agreement, plaintiff failed to present evidence that Vindel received a copy of the document from his mother or anyone else.

11

The first retainer agreement therefore was not a binding contract between plaintiff and Vindel, and cannot serve as the basis for plaintiff's claims against defendants.

We cannot, at this stage of the proceedings, say the same about the second retainer agreement. In his declaration supporting defendants' MSJ, Vindel stated he did not sign the second retainer agreement. Ana Bolanos, however, stated in her declaration that Vindel did sign that agreement. This created a triable issue of material fact regarding whether Vindel executed the second retainer agreement. The trial court therefore should not have granted defendants summary judgment.[8]

4. *Plaintiff Can Recover the Reasonable Value of His Services, Not the Amount Allegedly Due Under the Retainer Agreements*

In his FAC, plaintiff seeks to recover the full amount allegedly due under the two retainer agreements, namely 50 percent of Vindel's recovery, which amounts to $2.375 million. He cannot, however, as a matter of law recover the amount due under his alleged written contract with Vindel, though he can recover the reasonable value of his services under a quantum meruit theory of recovery.

a. *The Doctrine of Quantum Meruit*

"Quantum meruit refers to the well-established principle that 'the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered.' " (*Huskinson & Brown v. Wolf* (2004) 32 Cal.4th 453, 458.) A cause of action for breach of a quasi-contract, can be based on the equitable doctrine of quantum meruit. (See *id.* at p. 461; *Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1388.)

---

[8] Plaintiff contends his deposition testimony supports his contention that Vindel executed the second retainer agreement. At his deposition, plaintiff testified as follows: "Marvin [Vindel] was incapacitated [on October 21, 2004] and so his mother on his behalf retained us. And then thereafter, at a later point, Marvin himself executed a contract with us." We need not decide whether plaintiff's deposition testimony was sufficient evidence to create a triable issue of material fact because we conclude that Bolanos's statement was sufficient.

12

" 'Quasi-contract' is simply another way of describing the basis for the equitable remedy of restitution when an unjust enrichment has occurred. Often called quantum meruit, it applies '[w]here one obtains a benefit which he may not justly retain . . . . The quasi-contract, or contract "implied in law," is an obligation created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to his former position by return of the thing or its equivalent in money.' [Citation.] 'The so-called "contract implied by law" in reality is not a contract. [Citations.] "Quasi-contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice." [Citation].' " (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 388, fn. 6 (*McBride*).)

    b.  *Plaintiff Can Recover the Reasonable Value of His Services*

  In *Fracasse v. Brent* (1972) 6 Cal.3d 784 (*Fracasse*), our Supreme Court considered the issue of whether an attorney who has been discharged without cause by his client may recover as the damages the full fee specified in the contract of employment, regardless of the reasonable value of his services or the extent of work performed under that contract. (*Id.* at p. 786.) The plaintiff in *Fracasse* was an attorney who was retained by the defendant to pursue a personal injury action. Both parties executed a contingency retainer agreement. (*Ibid.*) The court held that the defendant's discharge of the plaintiff did not constitute a breach of contract as a matter of law because a client has the absolute right to discharge his or her attorney. (*Id.* at pp. 790-791.) The court further held that the plaintiff could not recover damages based on the terms of the contingency retainer agreement. Instead, the plaintiff was entitled to recover the reasonable value of his services under a quantum meruit theory of recovery. (*Id.* at p. 791.)

  In *Weiss v. Marcus* (1975) 51 Cal.App.3d 590, 598 (*Weiss*), the holding of *Fracasse* was applied to facts similar to this case. There, the plaintiff was an attorney who represented his client, Oran, in a personal injury action pursuant to a contingency fee agreement. (*Weiss*, at pp. 594-595.) Oran discharged the plaintiff and hired new counsel,

13

who obtained a $35,000 settlement payment.  The plaintiff asserted a lien in the amount of $6,750 for the reasonable value of his services.  (*Id.* at p. 595.)  The court held that the plaintiff was entitled to recover the amount of the lien against the new attorneys pursuant to various causes of action.  (*Id.* at pp. 599-601.)

Under *Fracasse* and *Weiss*, plaintiff's lien survived his discharge and entitled plaintiff to recover from defendants, out of the proceeds of the settlement agreement, the reasonable value of his services rendered prior to discharge.  (*Fracasse*, *supra*, 6 Cal.3d at pp. 786, 792; *Weiss*, *supra*, 51 Cal.App.3d at p. 598; see also *Plummer v. Day/Eisenberg, LLP* (2010) 184 Cal.App.4th 38, 50, fn. 11 (*Plummer*).)  This conclusion is of course based on our assumption, at this stage in the proceedings, that plaintiff's lien was valid.

Defendants argue that the reasonable value of plaintiff's services was not an issue raised by their MSJ because the FAC did not include a cause of action for quantum meruit.  We disagree.

It is true that a defendant's motion for summary judgment necessarily includes a test of the sufficiency of the FAC.  (*American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1117 (*American Airlines*).)  In determining the sufficiency of the FAC, we construe the pleading liberally.  (*Id.* at p. 1118.)  We ignore the labels in the FAC and look at the actual gravamen of the pleading to determine what cause of action, if any, is stated.  (*McBride*, *supra*, 123 Cal.App.4th at p. 387.)

Although the FAC does not label any of its causes of action "quantum meruit," it contains facts sufficient to support a cause of action based on the doctrine.  The FAC alleges that plaintiff provided Vindel, with his consent and authority, substantial legal services relating to the Caltrans case; that plaintiff notified Vindel and defendants of his attorney's lien based on those services; that defendants and Vindel received a $4.75 million settlement in the Caltrans case; and that defendants and Vindel refused to pay plaintiff any of that amount despite plaintiff's repeated requests that they do so.  These allegations are sufficient to state a claim by plaintiff against defendants for the reasonable value of plaintiff's services in the Caltrans lawsuit.

14

5. *Except for Plaintiff's Breach of Fiduciary Duty and Conversion Causes of Action, Defendants Did Not Meet Their Burden of Showing Plaintiff Cannot Prevail on His Causes of Action*

   a. *Unjust Enrichment*

The eighth cause of action in the FAC is for "unjust enrichment." "Unjust enrichment is not a cause of action, however, or even a remedy, but rather ' " 'a general principle, underlying various legal doctrines and remedies.' " . . . . [Citation.] It is synonymous with restitution. [Citation].' " (*McBride*, *supra*, 123 Cal.App.4th at p. 387.) Restitution is an equitable remedy a party may obtain if he or she prevails on a cause of action for breach of a quasi-contract implied by law, i.e., a claim for quantum meruit. (See *id.* at pp. 388-389; *Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 346.)

Construing the FAC liberally and disregarding the label of the claim, the eighth cause of action is essentially for quantum meruit. As we have explained, plaintiff can pursue this cause of action against defendants. The trial court therefore should not have granted defendants' motion for summary adjudication of this claim.

   b. *Breach of Implied Contract and Money Due on Implied Contract*

The first cause of action for breach of implied contract and second cause of action for money due on implied contract are based on the February 27, 2006, letter Maryam Parman sent to plaintiff. In that letter, Parman stated that her firm "intended to honor" plaintiff's previous agreement with Vindel by paying him the reasonable value of his services. It is unclear whether plaintiff contends he had an implied-in-fact[9] or implied-in-law contract with defendants.

---

[9] "A 'contract implied in fact "consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words." ' " (*San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 439.) "The essential elements of a claim of breach of contract, whether express or implied, are the contract, plaintiff's performance or excuse for nonperformance, the defendant's breach, and the resulting damages to the plaintiff." (*Ibid.*)

15

In its order granting the MSJ, the trial court stated that defendants were entitled to judgment as a matter of law with respect to plaintiff's first two causes of action because there was no enforceable retainer agreement between plaintiff and Vindel. We have, however, concluded that whether the second retainer agreement was enforceable is a triable issue of material fact.

On appeal, defendants do not make any arguments specifically relating to the first two causes of action. Because we reject defendants' general arguments regarding plaintiff's action, we conclude that the trial court erroneously adjudicated these two causes of action in defendants' favor.[10]

### c. *Money Had and Received*

The third cause of action in the FAC is for money had and received. " 'A cause of action is stated for money had and received if the defendant is indebted to the plaintiff in a certain sum "for money had and received by the defendant for the use of the plaintiff." ' " (*Gutierrez v. Girardi* (2011) 194 Cal.App.4th 925, 937.) "This common count is available in a great variety of situations [citation] and 'lies wherever one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter.' " (*Ibid.*)

Here, it is undisputed that plaintiff represented Vindel in the lawsuit against Caltrans, that defendants received a $4.75 million settlement from Caltrans to resolve that suit, and that defendants refused to honor plaintiff's lien. Assuming plaintiff had a bona fide lien—which we must at this point—the trial court erroneously granted defendants

---

[10] The trial court stated two additional grounds for granting summary adjudication on plaintiff's first and second causes of action. The court stated: "Mr. Vindel's right to change attorneys is absolute. It does not confer a breach of contract right upon Plaintiff." We agree that plaintiff cannot sue Vindel for breach of contract based on Vindel's termination of his representation. (*Fracasse*, *supra*, 6 Cal.3d at pp. 790-791.) But this does not mean plaintiff cannot sue defendants for failure to honor his attorney's lien. The trial court also stated that the alleged implied contract between plaintiff and defendants lacked consideration. On appeal, however, defendants and plaintiff presented no arguments regarding this conclusion. We thus decline to opine on the issue.

16

summary adjudication of plaintiff's money had and received cause of action. (See *Weiss*, *supra*, 51 Cal.App.3d at p. 599.)

### d. *Breach of Fiduciary Duty*

The FAC's fourth cause of action is for breach of fiduciary duty. An essential element of this cause of action is the existence of a fiduciary relationship between the plaintiff and the defendant. (*Pierce v. Lyman* (1991) 1 Cal.App.4th 1093, 1101.) "Fiduciary duties arise as a matter of law 'in certain technical, legal relationships.' " (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 632.) These include the relationships between principal and agent, attorney and client, partners, husband and wife with respect to the couple's community property, and executor and decedent's estate. (*Ibid.*) A fiduciary has a duty to act with the utmost care, integrity, honesty and loyalty. (*Leko v. Cornerstone Bldg. Inspection Service* (2001) 86 Cal.App.4th 1109, 1116.)

The FAC alleges no facts indicating plaintiff and defendants had a fiduciary relationship. Plaintiff was not defendants' client. At most, plaintiff had some sort of contractual or quasi-contractual relationship with defendants. This falls far short of a fiduciary relationship. Accordingly, we hold that the trial court correctly ruled that defendants did not owe plaintiff a fiduciary duty and that plaintiff cannot prevail on his breach of fiduciary cause of action as a matter of law.

Plaintiff's reliance on *Guzzetta v. State Bar* (1987) 43 Cal.3d 962 (*Guzzetta*) is misplaced. *Guzzetta* involved an attorney disciplinary proceeding. In an underlying divorce action, the accused attorney agreed to hold a certain amount of money in his client's trust account that both his client and his client's wife claimed an interest in. (*Id.* at p. 970.) The issue was whether the attorney had an obligation to his client's wife to comply with a former rule of professional conduct regarding trust accounts. (*Id.* at p. 979.) The court did not address the issue here, namely whether a successor lawyer has a fiduciary duty to a predecessor lawyer. *Guzzetta* thus is distinguishable from the present case.

17

e.      *Conversion*

The FAC's fifth cause of action is for conversion. " 'Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved.' " (*PCO*, *supra*, 150 Cal.App.4th at p. 395.) Plaintiff contends that the specific, identifiable sum involved here is the $2.375 million he is entitled to recover under the retainer agreements. As we have explained, however, plaintiff is not entitled to recover that sum; his recovery is limited to the reasonable value of his services.

The FAC does not allege a specific, identifiable sum of the reasonable value of plaintiff's services. Plaintiff's notices of attorney's lien also do not specify such a sum. Additionally, at his deposition, plaintiff evasively responded to a series of questions regarding the time he spent working on Vindel's lawsuit against Caltrans. Plaintiff repeatedly stated that he was not prepared to give an estimate, or had not made a calculation, regarding the amount of time he spent on specific tasks. When pressed on the issue, Majlessi stated that he would "estimate" he worked "at least" 2,000 hours "on the whole case."[11] Even in his briefs in this court, plaintiff does not identify the specific sum he claims was the reasonable value of his services. The trial court thus properly summarily adjudicated plaintiff's conversion cause of action in defendants' favor. (See *Vu v. California Commerce Club, Inc.* (1997) 58 Cal.App.4th 229, 231, 236 [summary judgment granted on plaintiff's conversion claim based on plaintiff's losses of "approximately" $1.4 million and $120,000 in card games due to alleged cheating]; *PCO*, *supra*, 150 Cal.App.4th at p. 397 [summary judgment granted on plaintiff's conversion claim based on taking of 8-18 bags of money].)

---

[11]     Plaintiff can recover on a quantum meruit theory the reasonable value of his services by providing an estimate, based on his review of the file and his personal recollection, of the amount of hours he spent on the case. (*Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 271.)

18

Plaintiff's reliance on *Weiss* is unpersuasive. There, the defendant attorneys were allegedly aware that a precise amount of money, $6,750, "belonged to and was the property of plaintiff by virtue of his lien for attorney's fees." (*Weiss*, *supra*, 51 Cal.App.3d at p. 596.) No similar facts exist here. *Weiss* is thus distinguishable from this case on the claim of conversion.

f.　*Intentional Interference With Contractual Relationship and Intentional Interference With Prospective Economic Advantage*

The sixth cause of action of the FAC is for intentional interference with contractual relationship. The elements of this cause of action are: "(1) a valid contract existing between plaintiff and another person; (2) defendant had knowledge of the contract and intended to induce a breach thereof; (3) *the contract was breached by the other party thereto*; (4) the breach was caused by defendant's wrongful or unjustified conduct; and (5) plaintiff suffered damage as a result of the breach." (*Weiss*, *supra*, 51 Cal.App.3d at pp. 600-601, italics added.)

The FAC alleges that defendants induced Vindel to breach his contract with plaintiff by telling Vindel that plaintiff "would be unable to meet his obligations" to Vindel under the contract. The FAC further alleges that as a result of defendants' conduct, Vindel "broke off his attorney-client contractual relationship" with plaintiff and entered into a contract with defendants. In other words, the FAC alleges that Vindel "breached" the retainer agreements by terminating them. In *Fracasse*, however, the Supreme Court held that a client has an absolute right to terminate his contractual relationship with his or her attorney and that when the client does so, it is not a breach of contract as a matter of law. (*Fracasse*, *supra*, 6 Cal.3d at pp. 790-791.) The FAC thus does not state a cause of action. Because a motion for summary judgment necessarily tests the sufficiency of a complaint (*American Airlines*, *supra*, 12 Cal.4th at p. 1117), the trial court correctly granted defendants summary adjudication of plaintiff's intentional interference with contractual relationship cause of action.

19

The seventh cause of action in the FAC is for intentional interference with prospective economic advantage. The elements of this cause of action are: " ' " '(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.' " ' " (*Plummer*, *supra*, 184 Cal.App.4th at 51.) Additionally, "a plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful 'by some measure beyond the fact of the interference itself.' " (*Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 392-393.)

Here, plaintiff contends that defendants "wrongfully" interfered with plaintiff's relationship with Vindel by soliciting Vindel in violation of Rule 1-400 of the State Bar Rules of Professional Conduct. Defendants, however, filed evidence indicating that Vindel contacted defendants first, not the other way around. This shifted the burden to plaintiff to produce evidence to the contrary. But plaintiff filed no admissible evidence showing that defendants solicited Vindel. (See fn. 3, *ante*.) The trial court therefore correctly granted defendants' motion for summary adjudication of plaintiff's intentional interference with prospective economic advantage cause of action.

6.      *Plaintiff Did Not Meet His Burden of Showing the Trial Court Abused Its Discretion in Denying Plaintiff's Request for a Continuance*

Code of Civil Procedure section 437c, subdivision (h) provides: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just." We review a trial court's denial of a request for continuance

20

of a motion for summary judgment or summary adjudication for abuse of discretion. (*Ace American Ins. Co. v. Walker* (2004) 121 Cal.App.4th 1017, 1023.)

Plaintiff argues that if this court does not reverse the judgment on the ground that there is a triable issue of material fact, we should do so on the ground that the trial court abused its discretion by denying his request for a continuance. Because we agree with plaintiff that there was a triable issue of material fact relating to each of his causes of action except for breach of fiduciary duty, conversion, intentional interference with contractual relations and intentional interference with prospective economic advantage, we analyze plaintiff's argument regarding his requested continuance only as it applies to breach of fiduciary duty and conversion.

Plaintiff stated in his declaration supporting his request for a continuance that defendants "refused to provide current contact information" for Vindel, and thus plaintiff had been deprived of an opportunity to depose him. Defendants, however, filed evidence that they provided plaintiff with Vindel's last known address even before defendants' MSJ was filed and served. On August 13, 2010, in response to an interrogatory, defendants stated that Vindel's "last known address" was 7555 W. 85th street, Los Angeles, California. Defendants further stated that they "are informed and believe that Marvin A. Vindel may be residing in Las Vegas, NV or Northridge, CA but are not aware of any specific address. Marvin A. Vindel's last known telephone number is (818) 339-2985." On March 18, 2011, defendants again stated in response to an interrogatory that Vindel's "last known address" was 7555 W. 85th street, Los Angeles, California.

Plaintiff dismisses these interrogatory responses as "out-of-date." The trial court, however, continued the hearing on the MSJ for more than a year to give plaintiff an opportunity to conduct more discovery and, if necessary, to file discovery motions.

Moreover, plaintiff did not provide an explanation in his declaration regarding what information he could obtain from Vindel that would support his breach of fiduciary duty, conversion or intentional interference with contractual relations and intentional interference with prospective economic advantage causes of action. Indeed, it is difficult to imagine what critical information Vindel would know about the alleged fiduciary

21

relationship between plaintiff and defendants, or the specific, identifiable sum defendants allegedly converted. Likewise, plaintiff does not explain how Vindel would be in a position to know any facts that would save plaintiff's intentional interference with contractual relations and intentional interference with prospective economic advantage causes of action. We thus conclude that the trial court did not abuse its discretion in denying plaintiff's request for a continuance.

       7.     *Additional Issues*

Plaintiff argues that even if the retainer agreements were not executed by Vindel, Vindel ratified the agreements by knowingly and voluntarily accepting plaintiff's legal services. Additionally, plaintiff contends that assuming his contract with Vindel was voidable because it was not in writing or it otherwise violated Business and Professions Code section 6147,[12] defendants were not entitled to summary judgment because Vindel did not void the contract. We do not reach these issues because we conclude that there is a triable issue of material fact as to whether Vindel executed the second retainer agreement, and that plaintiff's recovery is limited to the reasonable value of his services.

Defendants argue that we should strike plaintiff's opening brief because it does not set forth the applicable standards of review, supported by legal authority. We decline to do so and instead address plaintiff's appeal on the merits.

---

[12]     Business and Professions Code section 6147, subdivision (a) provides: "An attorney who contracts to represent a client on a contingency fee basis shall, at the time the contract is entered into, provide a duplicate copy of the contract, signed by both the attorney and the client, or the client's guardian or representative, to the plaintiff, or to the client's guardian or representative." Subdivision (b) of the statute provides: "Failure to comply with any provision of this section renders the agreement voidable at the option of the plaintiff, and the attorney shall thereupon be entitled to collect a reasonable fee." (*Id.*, subd. (b).)

22

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion. The trial court is directed to vacate its order granting defendants summary judgment and to enter a new and different order denying defendants' motion for summary judgment, denying defendants' motion for summary adjudication of plaintiff's first, second, third and eighth causes of action, and granting defendants' motion for summary adjudication on plaintiff's fourth, fifth, sixth and seventh causes of action. In the interests of justice, plaintiff and defendants shall bear their own costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KITCHING, J.

We concur:



KLEIN, P. J.



ALDRICH, J.


23