[No. B189856. Second Dist., Div. Five. Apr. 30, 2007.]

PCO, INC., et al., Plaintiffs and Appellants, v.
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL &
SHAPIRO, LLP, Defendant and Respondent.

COUNSEL

Blumenthal & Markham, Norman B. Blumenthal, Kyle R. Nordrehaug; Clark & Markham and David R. Markham for Plaintiffs and Appellants.

Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, Kerry Garvis Wright and Laura Premi for Defendant and Respondent.

## OPINION

**MOSK, J.—**

### INTRODUCTION

Plaintiffs PCO, Inc., and Personal Choice Opportunities, by and through their duly appointed receiver, Barry A. Fisher (plaintiffs), filed an action against Robert L. Shapiro (Shapiro) and his law firm, Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP (Christensen Firm), alleging that Shapiro improperly obtained monies that belonged to the receivership. Shapiro, a named partner in the Christensen Firm, was the attorney for David W. Laing (Laing), who was arrested and ultimately convicted for engaging in fraudulent activities with PCO, Inc., and Personal Choice Opportunities (collectively PCO).

The trial court granted the Christensen Firm's motion for summary judgment on the ground that the Christensen Firm cannot be held vicariously liable for Shapiro's alleged acts. We reverse the summary judgment, holding that plaintiffs have raised triable issues of fact with respect to whether Shapiro committed his alleged acts within the scope of his authority as a partner of the Christensen Firm. We affirm, however, the trial court's order granting summary adjudication in favor of the Christensen Firm on plaintiffs' causes of action for conversion and breach of fiduciary duty.

### BACKGROUND[1]

Plaintiffs alleged in their third amended complaint that PCO purported to be in the business of investing in viatical settlements,[2] but that, in fact, PCO never purchased any viatical settlements even though Laing, operating through PCO, obtained over $89 million in loans from investors for that purpose. Plaintiffs alleged that Laing was arrested and charged with various federal offenses in connection with PCO and ultimately pleaded guilty to certain charges. Plaintiffs further alleged that Shapiro and the Christensen

---

[1] We state the facts consistent with the rules that "we view the evidence in the light most favorable to plaintiffs" and "liberally construe plaintiffs' evidentiary submissions and strictly scrutinize defendants' own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiffs' favor." (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615, 88 P.3d 517]; see *Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 159–160 [49 Cal.Rptr.3d 153].) Any evidentiary objections not made are deemed waived. (Code Civ. Proc., § 437c, subds. (b)(5), (d).)

[2] In a viatical settlement, a beneficiary of a life insurance policy, the viator, assigns the death benefits to the investor in exchange for cash equal to a discount of the value of the death benefit payable under the policy and designates the investor as the irrevocable beneficiary under the policy. (See Black's Law Dict. (8th ed. 2004) p. 1405, cols. 1–2.)

Firm[3] appeared as Laing's counsel of record in federal criminal proceedings; Shapiro, acting for himself and as the agent of the Christensen Firm, directed a group of those associated with Laing to go to Laing's residence in Palm Springs, California, and there to obtain 12 duffel bags, each containing $500,000 in cash that Shapiro knew or should have known had been unlawfully obtained; Laing's associates converted 10 of those bags of money; and some of that money was used to post bail for Laing and to pay the fees of Shapiro and the Christensen Firm. Plaintiffs alleged that the money belonged to the receivership, and asserted causes of action for conversion, breach of fiduciary duty, money had and received, violation of Business and Professions Code section 17200 et seq. (fraudulent practice), violation of Government Code section 13975.1 (receiver recovery of monies unlawfully obtained), and violation of Civil Code section 3439.04 et seq. (fraudulent transfers).

Shapiro was a nonequity partner in the Christensen Firm. He did not share in the profits or losses of the Christensen Firm. (See *Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro* (2001) 91 Cal.App.4th 859, 862 [110 Cal.Rptr.2d 903] [reference to nonequity partners in that firm].)[4] He asserted that he maintained his criminal law practice separate and apart from the Christensen Firm, and that he received the monies as part of his representation of Laing and deposited the monies in his personal account— not the account of the Christensen Firm. Plaintiffs submitted evidence, including correspondence and records of court appearances, indicating that Shapiro acted on behalf of the Christensen Firm in representing Laing.

Shapiro and the Christensen Firm brought a joint motion for summary judgment or, in the alternative, summary adjudication, attacking each of plaintiffs' claims. The Christensen Firm also brought a second motion for summary judgment, arguing, inter alia, that the Christensen Firm cannot be held vicariously liable for Shapiro's conduct.

---

[3] The Christensen Firm is a limited liability partnership. (Corp. Code, § 16101, subd. (8)(A)(iii)(I); see State Bar Limited Liability Partnership Rules and Regulations.) The individual partners in a registered limited liability partnership generally are not vicariously liable for partnership obligations that do not arise from the partner's personal misconduct or guarantees. (Corp. Code, § 16306, subd. (c).)

[4] We refer to Shapiro as a partner, whatever the nature of his relationship with the law firm. (See Rest.3d Law Governing Lawyers, § 9, com. e, p. 90 ["Under some firm agreements, certain classifications of 'partner' (sometimes referred to as nonequity partners) may have no managerial power or participation in firm profits and thus be similar in some respects to senior employees"].) In some cases, the particular label placed upon the attorney may have legal ramifications (see *Chambers v. Kay* (2002) 29 Cal.4th 142, 150–151 [126 Cal.Rptr.2d 536, 56 P.3d 645]; *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1152–1156 [86 Cal.Rptr.2d 816, 980 P.2d 371]; see also *E.E.O.C. v. Sidley Austin Brown & Wood* (7th Cir. 2002) 315 F.3d 696, 701–707), but not in this case.

On the first motion, the trial court granted summary adjudication in favor of the Christensen Firm as to plaintiffs' claims for conversion and breach of fiduciary duty. On the second motion, the trial court granted summary judgment in favor of the Christensen Firm. The trial court entered judgment in favor of the Christensen Firm. Plaintiffs timely appealed.[5]

## DISCUSSION

### A. *Standard of Review*

We review the grant of summary judgment de novo and therefore make an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law. A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. Once the defendant has made such a showing, the burden shifts back to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or as to a defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849, 853–854, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*); *Interinsurance Exchange of the Automobile Club v. Superior Court* (2007) 148 Cal.App.4th 1218, 1226–1228 [56 Cal.Rptr.3d 421]; *Moser v. Ratinoff* (2003) 105 Cal.App.4th 1211, 1216–1217 [130 Cal.Rptr.2d 198].)

### B. *Plaintiffs Raised a Triable Issue of Fact Regarding the Christensen Firm's Vicarious Liability for Shapiro's Alleged Acts*

The trial court granted the Christensen Firm's motion for summary judgment on the ground that Shapiro acted outside the scope of his authority as a partner of the Christensen Firm when he participated in the removal and use of cash from Laing's residence. The trial court erred in doing so. Based on the evidence presented, a *"reasonable trier of fact"* (*Aguilar, supra*, 25 Cal.4th at p. 856) could find that Shapiro acted in his capacity as a member of the Christensen Firm and at a client's request to protect the funds from which the client's bail and the Christensen Firm's legal fees would be paid. Helping a client arrange bail and ensuring the payment of his firm's fees is within the scope of a law partner's authority.

---

[5] There were suggestions of a possible settlement. We allowed the parties a period to present to us such a settlement. We have not received it.

██ A law partnership, as any partnership, is vicariously liable "for loss or injury caused to a person, or for a penalty incurred, as a result of a wrongful act or omission, or other actionable conduct, of a partner acting in the ordinary course of business of the partnership or with authority of the partnership." (Corp. Code, § 16305, subd. (a); see *Blackmon v. Hale* (1970) 1 Cal.3d 548, 557 [83 Cal.Rptr. 194, 463 P.2d 418]; *Black v. Sullivan* (1975) 48 Cal.App.3d 557, 569 [122 Cal.Rptr. 119]; 1 Mallen & Smith, Legal Malpractice (2007 ed.) Vicarious Liability, § 5.8, p. 609 ["A law firm, of course, is liable for the conduct of its principals and employees"].) "The principle upon which the liability of a partnership for injuries to a third person rests is the same as that applicable to principal and agent and master and servant." (*Cahill Bros., Inc. v. Clementina Co.* (1962) 208 Cal.App.2d 367, 388 [25 Cal.Rptr. 301], disapproved on another ground in *Bay Development, Ltd. v. Superior Court* (1990) 50 Cal.3d 1012, 1029–1030, fn. 10 [269 Cal.Rptr. 720, 791 P.2d 290]; see *Madsen v. Cawthorne* (1938) 30 Cal.App.2d 124; 126 [85 P.2d 909].) "The rule is based on the policy that losses caused by the torts of employees, which as a practical matter are certain to occur in the conduct of the employer's enterprise, should be placed on the enterprise as a cost of doing business." (*Kephart v. Genuity, Inc.* (2006) 136 Cal.App.4th 280, 291 [38 Cal.Rptr.3d 845].)

██ "There is no requirement that an employee's act benefit an employer for respondeat superior to apply. In fact, an employer can be liable for his employee's unauthorized *intentional* torts committed within the scope of employment despite lack of benefit to the employer." (*Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 969 [227 Cal.Rptr. 106, 719 P.2d 676].) Accordingly, "employees' 'willful, malicious and even criminal torts' may be committed within the scope of employment, thus rendering their employers liable under respondeat superior. [Citations.] To be within the scope of employment, the incident giving rise to the injury must be an outgrowth of the employment, [and] the risk of injury must be inherent in the workplace, or typical of or broadly incidental to the employer's enterprise. [Citation.]" (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1008–1009 [111 Cal.Rptr.2d 564, 30 P.3d 57]; see *Blackmon v. Hale, supra,* 1 Cal.3d at p. 558 [misappropriation of funds from client trust account by attorney].)

██ The tortious conduct "must be 'a generally foreseeable consequence of the [employer's] activity.' In this usage, . . . foreseeability 'merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.' [Citations.]" (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 299 [48

Cal.Rptr.2d 510, 907 P.2d 358].) ■ Whether a partner's actions were within the scope of his authority is ordinarily a question of fact. (*Ibid.*; *Hartline v. Kaiser Foundation Hospitals* (2005) 132 Cal.App.4th 458, 465 [33 Cal.Rptr.3d 713].) ■ Unless there is an agreement to the contrary, the retention of an attorney in a law firm constitutes the retention of the entire firm. (*Streit v. Covington & Crowe* (2000) 82 Cal.App.4th 441, 445 [98 Cal.Rptr.2d 193] ["by retaining a single attorney, a client establishes an attorney-client relationship with any attorney who is a partner of or is employed by the retained attorney"]; see Rest.3d Law Governing Lawyers, § 14, com. h, p. 132 ["Many lawyers practice as partners, members, or associates of law firms [citation]. When a client retains a lawyer with such an affiliation, the lawyer's firm assumes the authority and responsibility of representing that client, unless the circumstances indicate otherwise"]; 1 Mallen & Smith, Legal Malpractice, *supra*, Vicarious Liability, § 5.3 at p. 546 ["Unless there is a specific agreement to the contrary, the retention of one partner of a law firm is a retention of the entire firm, so that any attorney in the firm may perform services"]; 1 Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2006) ¶ 3:19, pp. 3-5 to 3-6 ["Where a client retains a law firm . . . the client's relationship extends to all members of the firm or organization"]; see also *Blackmon v. Hale, supra*, 1 Cal.3d at p. 558 ["Although the [law] firm's records indicate that [the partners] regarded plaintiff as a client of [one partner] only, there is no evidence whatever that [the partners] ever informed plaintiff that [the partner] was not representing plaintiff as a member of the firm"].)

Shapiro declared that he represented Laing in his "private" capacity; that his activities on behalf of Laing were part of Shapiro's criminal law practice that was separate from his practice in the Christensen Firm; and that the monies he received were payable to him and deposited in his personal bank accounts. On the other hand, there is evidence suggesting a different relationship between Shapiro and the Christensen Firm in connection with this matter. The Christensen Firm's Web site promotes Shapiro as the "head of the firm's white-collar criminal defense section." His name is in the firm name. There is a retainer agreement dated April 30, 1997, between Laing and the Christensen Firm relating to the federal criminal charges against Laing. That agreement provides, "We are pleased that you have decided to retain Christensen, Miller, Fink, Jacobs, Glaser, Weil and Shapiro, LLP (the 'Firm') as your counsel. The Firm is committed to providing efficient and responsive service to our clients." The retainer agreement is signed by Shapiro.[6] The

---

[6] The document, although unsigned by the client, presumably was prepared by the Christensen Firm and signed by Shapiro. Its relevance is to the relationship between Shapiro and the Christensen Firm in this representation.

retainer agreement also specifies an hourly rate for Attorney Sara Caplan, who, documents indicate, is "of counsel" to the Christensen Firm. The Christensen Firm repeatedly billed Laing for over $23,000 in costs that were due. Shapiro used the Christensen Firm's letterhead in corresponding about Laing's case with the Assistant United States Attorney prosecuting Laing, and the Assistant United States Attorney addressed correspondence regarding Laing's case to Shapiro at the Christensen Firm. Shapiro identified his affiliation with the Christensen Firm on the record in at least three hearings in Laing's case, including one in the Central District of California and two in the Southern District of New York. Shapiro was asked at his deposition whether he represented to the court at the first bail hearing for Laing that he was with the Christensen Firm. He answered, "Yes. Yes, I always do." Thus, there is a triable issue of fact with regard to Shapiro's capacity in his representation of Laing.[7]

The summary judgment record also raises a triable issue of fact regarding whether Shapiro's participation in removing the cash from Laing's residence was a "foreseeable consequence" (*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th at p. 299) of the Christensen Firm's representation of Laing so that the Christensen Firm would be liable for the acts of Shapiro. The Christensen Firm's retainer agreement specifies a flat fee of $250,000; Shapiro testified that he told Laing and Laing's associates that Laing's legal fees "could run a million dollars." Shapiro further testified that it is the "general practice" of criminal defense attorneys who "bill on a fixed fee basis" to "be assured" that they are "paid in advance."

At Laing's initial bail hearing on April 4, 1997, the prosecutor indicated that Laing's bank accounts could be frozen by the end of that day. The only real property Laing owned was a condominium that he inherited from his father worth approximately $250,000. Nevertheless, Shapiro represented to the court at the bail hearing that Laing would be able to post a cash bail of $500,000 that afternoon, if time permitted. The court set Laing's bail at $500,000. Shapiro testified that after the bail hearing and at his client's request, he met with those associated with Laing and told them that Laing wanted them to "secure" property from Laing's residence, which Shapiro

---

[7] See *Dow v. Jones* (D.Md. 2004) 311 F.Supp.2d 461, 470–471 (plaintiff in malpractice action raised triable issue of firm's vicarious liability when attorney was listed by firm as a partner, retainer agreement with individual attorney was on firm letterhead, client met with attorney at firm's offices, and client received correspondence from attorney on firm letterhead); *Atlas Tack Corp. v. DiMasi* (1994) 37 Mass.App.Ct. 66, 68–70 [637 N.E.2d 230, 232–233] (triable issue where correspondence with client was on firm letterhead, bills were on firm letterhead, and checks for fees were made payable to firm).

knew to include over $1 million in cash. At that time, neither Shapiro nor the Christensen Firm had been paid a retainer. One of Laing's associates testified that $500,000 of the cash taken from Laing's residence was to be used as collateral for Laing's appearance bond. Of that money, $250,000 was ultimately used to pay Shapiro's fees.

■ Based on this evidence, a reasonable jury could conclude that Shapiro participated in removing the money from Laing's residence in an effort to help a client of the Christensen Firm post bail and to ensure that the Christensen Firm's fees were paid or at least indirectly to serve the interests of the Christensen Firm. Both are activities "typical of or broadly incidental" to the practice of a white-collar criminal defense lawyer (*Torres v. Parkhouse Tire Service, Inc., supra*, 26 Cal.4th at p. 1008) and therefore sufficient to render the Christensen Firm liable under the doctrine of respondeat superior. Thus, there is a triable issue of fact regarding whether Shapiro's alleged actions can be attributed to the Christensen Firm.

■ Moreover, any separate practice by Shapiro while he also was a partner in the Christensen Firm would not necessarily immunize the Christensen Firm from liability. " ' "[W]here the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly nor indirectly could he have been serving his employer." ' " (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1004 [47 Cal.Rptr.2d 478, 906 P.2d 440]; see *Baptist v. Robinson, supra*, 143 Cal.App.4th at p. 161.) Based on the evidence, we cannot say as a matter of law that it clearly appears that Shapiro was not directly or indirectly serving the Christensen Firm. The trial court therefore erred in granting summary judgment in favor of the Christensen Firm.

C. *Plaintiffs Failed to Raise Triable Issues of Fact on Their Claims for Conversion and Breach of Fiduciary Duty*

Because this is an appeal from a final judgment, we have jurisdiction to review the trial court's prior grant of summary adjudication on plaintiffs' claims for conversion and breach of fiduciary duty. (Code Civ. Proc., § 906; *Jennings v. Marralle* (1994) 8 Cal.4th 121, 128 [32 Cal.Rptr.2d 275, 876 P.2d 1074]; *Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1431 [128 Cal.Rptr.2d 31].)

### 1. *Conversion Claim*

The trial court granted summary adjudication against plaintiffs on their conversion claim on the ground that plaintiffs, in effect, failed to identify a "definite sum" of money received by the Christensen Firm. Plaintiffs argue that the "definite sum" of money consists of the money that was removed from Laing's residence that has not been recovered, the precise amount of which "is properly for a jury to determine." We reject that contention.

■ "A cause of action for conversion requires allegations of plaintiff's ownership or right to possession of property; defendant's wrongful act toward or disposition of the property, interfering with plaintiff's possession; and damage to plaintiff. [Citation.] Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment. [Citation.]" (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1491 [49 Cal.Rptr.3d 227]; see *Haigler v. Donnelly* (1941) 18 Cal.2d 674, 681 [117 P.2d 331]; *Fischer v. Machado* (1996) 50 Cal.App.4th 1069, 1072–1074 [58 Cal.Rptr.2d 213] [sales agent liable for conversion of proceeds from consignment sale of farm products]; *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.* (1996) 49 Cal.App.4th 472, 485 [56 Cal.Rptr.2d 756] ["money cannot be the subject of a conversion action unless a specific sum capable of identification is involved."].) A "generalized claim for money [is] not actionable as conversion." (*Vu v. California Commerce Club, Inc.* (1997) 58 Cal.App.4th 229, 235 [68 Cal.Rptr.2d 31]; 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 703, pp. 1026–1027.)

■ The tort of conversion is derived from the common law action of trover. The gravamen of the tort is the defendant's hostile act of dominion or control over a specific chattel to which the plaintiff has the right of immediate possession. (See generally, Rest.2d Torts, § 222A, com. a, p. 431; 1 Dobbs, The Law of Torts (2001), § 59, pp. 121–122.) That is why money can only be treated as specific property subject to being converted when it is "identified as a specific thing." (*Baxter v. King* (1927) 81 Cal.App. 192, 194 [253 P. 172] ["It is true that sometimes money can be treated as specific property, and where identified can form the basis of an action for conversion and might also be the subject of an action for the specific recovery of personal property"].)

The California Supreme Court stated, "While it is true that money cannot be the subject of an action for conversion unless a specific sum capable of identification is involved [citation], it is not necessary that each coin or bill be earmarked." (*Haigler v. Donnelly, supra*, 18 Cal.2d at p. 681.) This statement appears to be in conformity with the modern view of the law. As one authority wrote: "Identifiable, specific coins or bills are subject to conversion if they are identifiable as the particular coins or bills taken from the plaintiff. The old idea that money could be converted only if it was in a 'bag' now seems obsolete. Today, it might be plausible to say that when the defendant commits an affirmative act and physically takes control of particular paper monies he is guilty of conversion, even if the particular bills or coins cannot be identified. Certainly the plaintiff is entitled to recover on some theory, even if not on the basis of conversion." (1 Dobbs, The Law of Torts, *supra*, § 63, pp. 132–133, fns. omitted.)

California cases permitting an action for conversion of money typically involve those who have misappropriated, commingled, or misapplied specific funds held for the benefit of others. (See, e.g., *Haigler v. Donnelly, supra*, 18 Cal.2d at p. 681 [real estate broker]; *Fischer v. Machado, supra*, 50 Cal.App.4th at pp. 1072–1074 [sales agent for consigned farm products]; *Weiss v. Marcus* (1975) 51 Cal.App.3d 590, 599 [124 Cal.Rptr. 297] [attorney's claim for $6,750 fee from proceeds of settlement subject to lien]; *Watson v. Stockton Morris Plan Co.* (1939) 34 Cal.App.2d 393, 403 [93 P.2d 855] [savings and loan issued duplicate passbook and delivered funds to third party].) In each of these cases, the amount of money converted was readily ascertainable.

In contrast, actions for the conversion of money have not been permitted when the amount of money involved is not a definite sum. (*Vu v. California Commerce Club, Inc., supra*, 58 Cal.App.4th at p. 235; *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc., supra*, 49 Cal.App.4th at p. 485 [no conversion where money was allegedly misappropriated "over time, in various sums, without any indication that it was held in trust for" plaintiff]; see also *Trustees of So. CA Pipe Trades v. Temecula Mech.* (C.D.Cal. 2006) 438 F.Supp.2d 1156, 1171–1172 [applying California law].) For example, in *Vu v. California Commerce Club, Inc., supra*, 58 Cal.App.4th 229, the court affirmed a summary judgment on a conversion claim against two gamblers who lost "approximately $1.4 million" and "approximately $120,000," respectively, at a specific card club during specified periods of time, due to alleged cheating. (*Id.* at pp. 231–232.) The court held, "neither by pleading

nor responsive proof did plaintiffs identify any specific, identifiable sums that the club took from them. That rendered the generalized claim for money not actionable as conversion." (*Id.* at p. 235.)

In this case, plaintiffs may have stated a cause of action for conversion by alleging, in effect, an amount of cash "capable of identification." (*Haigler v. Donnelly, supra*, 18 Cal.2d at p. 681.) Plaintiffs alleged a conversion of 10 duffel bags, each containing $500,000. But at the summary judgment stage, plaintiffs failed to present evidence of a definite, identifiable sum of money. The evidence and plaintiffs' separate statement of undisputed facts refer to as few as eight bags or "8–9 bags" and up to 18 bags of money that were removed from Laing's residence. Further, there is evidence that one bag contained as little as $250,000 and that other bags contained as much as $500,000. Plaintiffs referred to bags that could hold "up to $780,000" and bags that could hold $400,000 to $500,000.

The evidence of the sum removed from Laing's residence reflects amounts varying by millions of dollars. The uncertainty regarding the sum plaintiffs seek is exemplified by a statement of decision in a prior civil case, brought by plaintiffs against one of Laing's associates, in which the trial judge found that Laing's associates removed "at least 8" bags, each containing $450,000, for a sum of "at least $3.6 million." That decision was submitted as evidence in this case. In this case, however, plaintiffs submitted a declaration of the receiver in opposition to the summary adjudication motion claiming that Laing's associates removed "about $6.3 million, in cash, . . . which is consistent with the testimony that the bags held $500,000 each and there were about 12 bags." Thus, plaintiffs could only estimate the amount of cash. The record is not sufficient to fulfill the requirement that if money is the subject of the conversion action, a specific sum be identified. The trial court properly granted summary adjudication on plaintiffs' conversion claim.

### 2. *Fiduciary Duty Claim*

The trial court granted summary adjudication against plaintiffs on their claim for breach of fiduciary duty on the ground that plaintiffs failed to prove that the Christensen Firm owed plaintiffs a fiduciary duty. We disagree with plaintiffs' contention that the Christensen Firm would owe such a fiduciary duty if it or Shapiro received money from Laing's residence that belonged to plaintiffs.

Plaintiffs rely on *Johnstone v. State Bar* (1966) 64 Cal.2d 153 [49 Cal.Rptr. 97, 410 P.2d 617] and *Crooks v. State Bar* (1970) 3 Cal.3d 346 [90 Cal.Rptr. 600, 475 P.2d 872]. These cases are inapposite. Both cases hold

than an attorney who holds funds in trust for a third party assumes a fiduciary duty to that party, and may be disciplined for violating that duty by mishandling the funds held in trust. (*Johnstone v. State Bar, supra*, 64 Cal.2d at pp. 156–157; *Crooks v. State Bar, supra*, 3 Cal.3d at p. 355.) There may be questions about the sources of the monies used for Laing's bail and payment of the retainer agreement.[8] The undisputed evidence, however, establishes that whatever money Shapiro or the Christensen Firm ultimately received and kept, it was for legal services. There is no evidence that Shapiro or the Christensen Firm received or held the money for the benefit of plaintiffs, or that Shapiro or the Christensen Firm otherwise stood in a fiduciary relationship with plaintiffs.

Plaintiffs argue, in essence, that Shapiro (and thus the Christensen Firm) stood in a fiduciary relationship with plaintiffs because plaintiffs are entitled to impose a constructive trust over the money received by Shapiro. (Civil Code, §§ 2223, 2224.) A constructive trust, however, is an equitable *remedy*, not a substantive claim for relief. "A constructive trust is an involuntary equitable trust created by operation of law as a remedy to compel the transfer of property from the person wrongfully holding it to the rightful owner. [Citations.] The essence of the theory of constructive trust is to prevent unjust enrichment and to prevent a person from taking advantage of his or her own wrongdoing. [Citations.]" (*Communist Party v. 522 Valencia, Inc.* (1995) 35 Cal.App.4th 980, 990 [41 Cal.Rptr.2d 618]; see *Campbell v. Superior Court* (2005) 132 Cal.App.4th 904, 920 [34 Cal.Rptr.3d 68].) Before a constructive trust can be imposed, the plaintiff must prove that the defendant's acquisition of the property was *wrongful*. (*Ibid.* [" 'a constructive trust may only be imposed where the following three conditions are satisfied: (1) the existence of a *res* (property or some interest in property); (2) the *right* of a complaining party to that res; and (3) some *wrongful* acquisition or detention of the res by another party who is not entitled to it' "], quoting *Communist Party v. 522 Valencia, Inc., supra*, 35 Cal.App.4th at p. 990].) Plaintiffs' argument is thus circular. They argue that because the Christensen Firm breached a fiduciary duty, a constructive trust arose; and because a constructive trust arose, the Christensen Firm owed the very fiduciary duty it is alleged to have breached. Such an argument fails. Further, to accept plaintiffs' contention would mean that a separate, actionable breach of fiduciary duty occurs in any case involving an alleged conversion of tangible personal property. Plaintiffs cite no authority to support such a conclusion. The trial court properly granted summary adjudication against plaintiffs on their breach of fiduciary duty claim.

---

[8] Plaintiffs also assert that Laing's associates delivered a bag containing $1 million to Shapiro in his office. The record does not support that claim.

## DISPOSITION

The summary judgment in favor of the Christensen Firm is reversed. The summary adjudications against plaintiffs on their causes of action for conversion and breach of fiduciary duty are affirmed. No costs are awarded.

Turner, P. J., and Armstrong, J., concurred.