Filed 12/21/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SP INVESTMENT FUND I LLC, | B276822 and B278559 |
| Plaintiff and Appellant, | (Los Angeles County |
| v. | Super. Ct. No. BC581684) |
| ALBERT CRAIG CATTELL, | |
| Defendant and Respondent. | |

APPEAL from a judgment and order of the Superior Court for Los Angeles County, Barbara A. Meiers, Judge.  Reversed.

Greenberg Glusker Fields Claman & Machtinger and Garrett L. Hanken for Plaintiff and Appellant.

Miller Law Group, Joseph P. Mascovich and C. Edward Langhammer, Jr., for Defendant and Respondent.

This case involves two consolidated appeals. In the first appeal, plaintiff SP Investment Fund I LLC (SP) appeals from a judgment of dismissal following the granting of the trial court's own motion for judgment on the pleadings in SP's breach of contract and conversion action against defendant Albert Craig Cattell. SP also appeals from the post-judgment order granting Cattell his contractual attorney fees. We conclude SP adequately stated causes of action for breach of contract and conversion. Accordingly, we reverse the judgment and, because Cattell's entitlement to attorney fees was predicated upon that judgment, we also reverse the order awarding fees.

## BACKGROUND[1]

Cattell owned a 1.24 percent limited partnership interest (the Partnership Interest) in Morrisania IV Associates, Limited Partnership, a New York limited partnership (the Partnership). In December 2013, SP and Cattell entered into a written agreement (the Agreement) by which Cattell agreed to sell, and SP agreed to buy, the Partnership Interest for $10,000.

---

[1] Because this appeal is from a dismissal on a motion for judgment on the pleadings, our discussion of the factual background is based upon the allegations of the complaint, which we assume to be true for purposes of this appeal, and its attached exhibit (the Agreement). (*Southern California Edison Co. v. City of Victorville* (2013) 217 Cal.App.4th 218, 227.)

A.      *Terms of the Agreement*

The effective date of the Agreement was December 6, 2013; it had an expiration date of June 30, 2015.  The Agreement provided that on or about the effective date, Cattell would deliver to SP, to hold in trust until the transaction closed, an assignment of the Partnership Interest. The assignment assigned Cattell's entire Partnership Interest to SP, including all rights to any monetary amounts or property paid or distributed by the Partnership, the rights to vote as a limited partner and to review books and records of the Partnership, and the rights as a beneficiary of fiduciary duties owed by other partners in the Partnership.  It provided, however, that it would not assign "any portion of such Partnership Interest as to which any approvals, consents, or other actions or inactions of the Partnership and/or other partners in the Partnership and/or governmental authorities and/or other parties as are necessary for [SP] to receive, exercise, and/or enjoy the full benefit of such portion of the Partnership Interest ('Necessary Approvals') have not been obtained."

Beyond the assignment, the most significant provisions of the Agreement, for purposes of this appeal, are found in sections 6, 8, 9, and 10.

In section 6 of the Agreement, Cattell agreed to:

• take whatever actions and execute any instruments necessary to obtain or render unnecessary the "Necessary Approvals," which are defined as "any approvals, consents, or other actions of the Partnership and/or other partners in the Partnership and/or governmental authorities and/or other parties that are necessary for

3

[SP] to receive, exercise, and/or enjoy the full benefit of all or any portion of the Partnership Interest";

• before, on, and after the Closing Date, to hold the Partnership Interest in trust for SP's benefit and to receive in trust for SP all economic benefits he receives from the Partnership on or after the effective date of the Agreement;

• consult with SP regarding all opportunities to vote, elect, or act with regard to the Partnership or the Partnership Interest, and to vote, elect, or act only as SP requests; and

• deliver to SP any information, documents, correspondence, conversations, etc. relating to the Partnership and/or the Partnership Interest that Cattell receives on or after the effective date of the Agreement.

Section 9 provided that the transaction would close within five days of satisfaction of the conditions precedent set forth in section 8 of the Agreement. Section 8 provided that "Buyer's [i.e., SP's] obligation to close is conditioned upon all of the following conditions precedent . . . , which may be satisfied as conditions to Closing by being met, prior to the Expiration Date, or by being waived in writing by [SP]." One of those conditions precedent was that "[t]he Necessary Approvals have been obtained or have ceased to be necessary."

The Agreement also included a provision (section 10) entitled "Closing Without Necessary Approvals." That section provided that, if closing occurred without the Necessary Approvals, "[SP] shall continue to hold the Assignment in trust on and after the Closing Date and

4

[Cattell] shall continue to be required to perform the additional covenants specified in Section 6."

B.    *Closing of the Transaction and Filing of the Complaint*

SP paid the full purchase price, $10,000, to Cattell on or about December 6, 2013.  On January 8, 2015, SP waived all of the conditions precedent, including the Necessary Approvals condition.  Therefore, under section 9 of the Agreement, the transaction closed no later than January 13, 2015.

In May 2015, SP filed the instant lawsuit against Cattell.  It alleges that under the terms of the Agreement, Cattell was obligated, both before and after the closing, to take actions requested by SP to obtain or render unnecessary the Necessary Approvals, to turn over to SP all economic benefits he received from the Partnership, and to deliver to SP any information, documents, and correspondence he received related to the Partnership.  SP alleges that since December 2014, Cattell has refused to deliver Partnership-related documents to SP, has refused to take actions and execute instruments requested by SP to obtain or render unnecessary the Necessary Approvals, and has refused to turn over to SP distributions from the Partnership, resulting in damages to SP of more than $190,000.  Based upon these allegations, SP asserts claims for breach of contract and conversion.

C.    *Motion for Judgment on the Pleadings*

Cattell filed an answer to the complaint, generally denying the allegations of the complaint and asserting 40 affirmative defenses.  It

5

appears that Cattell then filed a notice of related cases, identifying several cases SP had filed against various defendants from whom SP had purchased other partnership interests. The trial court (Hon. Gregory W. Alarcon) found the cases were not related because they "involve different seller defendants, different contract dates, different defenses raised, and some different entities in which interests allegedly were sold. [¶] That the same plaintiff reportedly has had an ongoing business practice of purchasing others' investment interests, is not sufficient to deem the many cases related." The court ordered that all of the cases remained assigned to their respective departments.

The trial court assigned to this case (Hon. Barbara A. Meiers) then held a status conference, at which the court set "a 'court's own motion' to dismiss or strike or grant a judgment on the pleadings as to the entire action under [Code of Civil Procedure sections] 436/438, given that plaintiff's entire case rest[s] upon plaintiff's belief that as buyer it could waive getting the approvals called for under the contract, whereas, in law and fact, plaintiff as buyer it appears could not do so, and that the obtaining of these approvals by plaintiff was a condition precedent to the seller having to go forward with the sale."

The court provided the parties an opportunity to brief the issue raised by the court, ordering both parties to file opening briefs simultaneously, followed by simultaneous response briefs.

In his opening brief, Cattell argued that the trial court was correct that obtaining the Necessary Approvals was a condition precedent to the sale, that the condition could not be waived, and therefore that both of SP's causes of action necessarily failed. In support of his argument

6

that the condition could not be waived, Cattell cited to California Corporations Code section 15907.02, subdivision (h), which provides that "[a] transferee of a partnership interest, including a transferee of a general partner, may become a limited partner if and to the extent that (1) the partnership agreement provides or (2) all general partners and a majority in interest of the limited partners consent."

SP focused in its opening brief on subdivision (f) of California Corporations Code section 15907.02, believing that Cattell's contention in his simultaneously-filed opening brief would be based upon that subdivision. That subdivision provides that "[a] transfer of a partner's transferable interest in the limited partnership in violation of a restriction on transfer contained in the partnership agreement is ineffective as to a person having notice of the restriction at the time of transfer." (Corp. Code, § 15907.02, subd. (f).) SP argued that judgment on the pleadings could not be based upon this subdivision because the complaint does not allege any term of the Partnership's partnership agreement; whether there is a restriction on transfer, therefore, must be resolved by a motion for summary judgment or trial.[2] In any event, SP argued, its complaint does not seek to enforce a transfer of the Partnership Interest, but instead seeks to enforce terms of the Agreement that the parties agreed would apply even if the Necessary Approvals were not obtained.

---

[2] SP also noted that, because the Partnership is a New York limited partnership, California partnership law does not apply.

7

In his response brief, Cattell argued that California law (which he contended governed under the choice of law provision in the Agreement), barred SP from contracting to obtain the benefits from the Partnership Interest without an actual transfer of that interest. He asserted that SP's failure (and inability) to allege it obtained the Necessary Approvals for transfer of the Partnership Interest was fatal to its claims. In its response brief, SP argued that Cattell's obligations under the Agreement were not subject to any conditions precedent; instead, the conditions precedent were for SP's benefit, and the Agreement expressly stated that SP could waive those conditions. SP also contended that the California Corporations Code did not excuse Cattell from performing his obligations under the Agreement, because those obligations were not conditioned upon an actual transfer of the Partnership Interest. Therefore, SP asserted that judgment on the pleadings was not appropriate.

At the hearing on the court's motion, the court focused on section 8 of the Agreement (listing the conditions precedent). It acknowledged that that section stated that SP could waive those conditions, but found that the waiver could not apply to the condition that constituted a legal obligation placed on SP to obtain the consent of the Partnership. Therefore, the court found there was no breach of contract alleged. The court also found that SP's conversion claim failed because a conversion action will not lie for cash. In response to SP's request for leave to amend, the court granted leave to amend only to allege a claim for the return of the $10,000 that SP had paid to Cattell. The court ordered

8

that if SP did not file an amended pleading within 15 days, the entire action automatically would be dismissed with prejudice.

SP did not file an amended pleading, and the matter was dismissed. Cattell filed a motion for attorney fees based upon the attorney fee provision in the Agreement. SP did not file an opposition to the motion. The court granted the motion and awarded Cattell $38,144 in fees. SP timely filed notices of appeal from the dismissal order and the order awarding fees.

## DISCUSSION

SP contends the trial court erred in granting judgment on the pleadings because the complaint alleged all the required elements of its claims for breach of contract and conversion, and no grounds appeared on the face of the complaint to defeat those claims. We agree.[3]

Code of Civil Procedure section 438 provides that a court may on its own motion grant a motion for judgment on the pleadings in favor of a defendant if "[t]he complaint does not state facts sufficient to constitute a cause of action against that defendant." (Code Civ. Proc., § 438, subd. (c)(3)(B)(ii).) ""The standard for granting a motion for judgment on the pleadings is essentially the same as that applicable to a general demurrer, that is, under the state of the pleadings, together

---

[3] SP raises additional arguments regarding alleged procedural defects and the trial court's denial of leave to amend except to allege a claim for the return of the money SP paid to Cattell. Because we conclude the court erred in granting judgment on the pleadings, we need not address those arguments.

9

with matters that may be judicially noticed, it appears that a party is entitled to judgment as a matter of law." [Citation.]' [Citation.] '[J]udgment on the pleadings must be denied where there are material factual issues that require evidentiary resolution.' [Citation.]" (*Southern California Edison Co. v. City of Victorville*, *supra*, 217 Cal.App.4th at p. 227.) We review de novo the judgment following the granting of a motion for judgment on the pleadings. (*Ibid.*)

A.    *Breach of Contract Claim*

As noted, the trial court granted judgment on the pleadings with regard to the breach of contract claim based upon its interpretation of the Agreement, which was attached to the complaint. The court concluded that the Agreement required that the Necessary Approvals be obtained or rendered unnecessary as a condition precedent to closing the transaction, and it found that SP could not waive this condition as a matter of law. Because the complaint alleges that this condition was not satisfied, the court concluded that SP could not state a cause of action for breach of contract.

In his respondent's brief, Cattell argues that the trial court correctly interpreted the Agreement. According to Cattell, the clear intent of the Agreement was to transfer the Partnership Interest. He contends that, under both California law (Corp. Code, § 15907.02, subd.

(h)) and New York law (N.Y. Partnership L. § 121-704(a)),[4] no such transfer can occur unless the requisite percentage of the partners agree to it or the partnership agreement does not require approval by the partners. Since the complaint does not allege that the Partnership agreement does not require approval for a transfer of a partner's interest, Cattell argues that SP's failure to obtain the Necessary Approvals is fatal to its breach of contract claim.

The problem with Cattell's and the trial court's interpretation of the Agreement is that it ignores the structure of the transaction and the Agreement's key provisions. While Cattell is correct that the ultimate intent of the Agreement was to transfer the Partnership Interest, the Agreement was structured in such a way to allow SP to receive many of the benefits of owning the interest before any transfer took place, or if there was no transfer at all.

The Agreement provided that the transaction could close -- i.e., become a binding contract -- even if the Necessary Approvals for the transfer of the Partnership Interest were not obtained. Section 8 set forth the conditions precedent, including the Necessary Approvals condition, to *SP's* obligation to close the transaction. There were no conditions precedent to Cattell's obligation to close, and the agreement expressly stated that SP could waive any or all of the conditions

---

4    New York Partnership Law section 121-704(a) provides: "An assignee of a partnership interest, including an assignee of a general partner, may become a limited partner if (i) the assignor gives the assignee that right in accordance with authority granted in the partnership agreement, or (ii) all partners consent in writing, or (iii) to the extent that the partnership agreement so provides."

precedent. Under section 9, the transaction closed once the conditions precedent were satisfied or waived. And section 10 made clear that if the transaction closed without the Necessary Approvals, SP was still entitled to the contracted-for benefits, i.e., the right to receive from Cattell any distributions, documents and other information he received from the Partnership, and the right to direct Cattell as to voting on Partnership matters.

Cattell's reliance on California and New York partnership law to argue that SP could not obtain the benefits of the Partnership Interest without obtaining the Necessary Approvals is misplaced. California Corporations Code section 15907.02 and New York Partnership Law section 121-704 govern only the transfer of limited partnership interests. There is nothing in any of the cited laws that prohibits a limited partner from entering into a contract with a third party in which the partner agrees to turn over to the third party any distributions, information, or documents he or she receives from the Partnership, or to vote on Partnership matters as instructed by the third party.[5] Instead, those laws merely preclude the third party from being recognized as a limited partner if the partnership agreement requires the partners' approval and that approval has not been given.

In short, even if the Necessary Approvals were legally required to effectuate a transfer of the Partnership Interest (which is an issue that

---

[5]      Of course, because the limited partner in that circumstance remains a partner in the Partnership, he or she continues to owe whatever fiduciary duties a limited partner owes to the Partnership and other partners, and the other partners and the Partnership owe fiduciary duties only to the limited partner and not to the third party.

could not be determined, in any event, on a motion for judgment on the pleadings because the pleadings did not allege the terms of the Partnership's partnership agreement), SP's failure to obtain them is not fatal to SP's breach of contract claim. Therefore, the trial court erred by granting judgment on the pleadings of the breach of contract claim.

B.    *Conversion Claim*

The trial court granted judgment on the pleadings as to the conversion claim on the ground that a conversion action will not lie for cash. The court erred.

"'A cause of action for conversion requires allegations of plaintiff's ownership or right to possession of property; defendant's wrongful act toward or disposition of the property, interfering with plaintiff's possession; and damage to plaintiff. [Citation.]'" (*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 395.) Although the court in this case was correct that cash ordinarily cannot be the subject of a cause of action for conversion (*ibid.* ["A 'generalized claim for money [is] not actionable as conversion'"]), when the money at issue is a specific identifiable sum held for the benefit of another that has been misappropriated, a conversion claim can be made. (*Id.* at pp. 395-396.)

In this case, SP alleges that Cattell received monetary distributions from the Partnership that, under the Agreement, he held in trust for SP's benefit and he has refused to turn those funds over to SP. Its conversion claim, therefore, is not a generalized claim for money but rather a claim for a specific identifiable sum of money received by

13

Cattell for SP's benefit. Thus, SP adequately stated a cause of action for conversion.

C.    *Attorney Fee Award*

The trial court awarded Cattell his attorney fees as the prevailing party on an action involving a contract with an attorney fee provision. In light of our conclusion that the dismissal of SP's lawsuit was erroneous, the award of fees must be reversed.

**DISPOSITION**

The judgment of dismissal and order awarding attorney fees are reversed. SP shall recover its costs on appeal.

**CERTIFIED FOR PUBLICATION**


WILLHITE, Acting P. J.


We concur:



MANELLA, J.



COLLINS, J.


14