Filed 8/29/24  JTX Group v. United Properties CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JTX GROUP, INC., | B324651 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV43653) |
| v. | |
| UNITED PROPERTIES, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen I. Goorvich, Judge.  Affirmed.

FTW Law Group and Felix T. Woo for Plaintiff and Appellant.

Mazur & Mazur and Janice R. Mazur for Defendant and Respondent.

\* \* \* \* \* \*

JTX Group, Inc. (JTX) sued a dozen or so companies and individuals after a business deal involving a meat processing business was spoiled, allegedly by fraud.  As part of its lawsuit, JTX sued United Properties, Inc. (United), which borrowed from another defendant but then fully repaid a portion of the $1.5 million that JTX's owner loaned to that other defendant as part of the deal.  Because it is undisputed that United repaid the money it borrowed before JTX canceled the deal, United's conduct neither injured nor damaged JTX.  As a result, we conclude that the trial court properly granted summary judgment for United on JTX's claims for conversion, theft under Penal Code section 496, and unlawful business practices.  We accordingly affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

#### A.     *JTX enters into a deal with Global Meat Federation, Inc. (Global Meat)*

JTX is a California corporation controlled by Qingfu Xu (Xu).

In May 2019, Xu met with Jamal Dawood (Dawood).  Dawood, along with Jacky Lo and through an intermediary company, is the 50 percent owner of Global Meat.  Global Meat, through an intermediary company, operates a slaughterhouse in Pico Rivera, California.

On May 6, 2019, JTX and Global Meat memorialized a tentative agreement in a "term sheet" through which JTX would acquire a 55 percent ownership interest in Global Meat for $54

2

million.  One of the terms called for JTX to advance Global Meat up to $4 million in working capital by funding a revolving line of credit.

On May 7, 2019, JTX and Global Meat signed a "Revolving Line of Credit Promissory Note."  Under this agreement, JTX offered to make up to $4 million available to Global Meat for a period of 90 days to use as working capital while JTX conducted due diligence to consummate the deal.  Among other things, the agreement obligated Global Meat to refund any "advanced amounts within . . . 30 days" if the overarching deal did not go through.

Between May 7, 2019, and May 22, 2019, Xu directed three wire transfers—each for $500,000—from accounts held by two businesses Xu "own[ed] or controlled" (A&J Capital, Inc. and Greenpeak Capital, LLC) to a bank account held by TD Capital, LLC (TD Capital), which was the company Global Meat designated to receive the funds for the revolving line of credit.

**B.** ***United temporarily borrows funds and draws them from an account held by TD Capital***

United is a Wyoming corporation in the business of "various real estate matters, including . . . purchasing distressed properties and reselling or 'flipping' the properties."  Christine Armani-Dawood (Armani) is the president as well as the sole shareholder (and hence sole owner) of United.  Armani is in a long-term romantic relationship with Dawood and has lived with him for nearly a decade.  Dawood has no ownership interest in United, but for several years was listed as United's "CEO" on the signature card for United's bank account at Bank of America.

In "late May or early June 2019," Armani "became aware" of an upcoming foreclosure sale for a residential property on

3

Beverly Way in Altadena. Because United did not have the money to make a bid, United—through Armani—on June 3, 2019, opened up a $600,000 line of credit and promissory note with Colony Capital, LLC (Colony).

On June 3, 2019, United borrowed $470,155 from Colony. The line of credit designated TD Capital as Colony's "servicer," so cashier's checks totaling $470,155 and payable to United were drawn from the same bank account held by TD Capital into which Xu had previously deposited the $1.5 million.

When United did not make the winning bid at the foreclosure sale, United wired the funds it had borrowed back to Colony on June 27, 2019.

At no point during the 24 days that United held the money from the TD Capital account did JTX or Xu demand those funds.

### C.    *JTX cancels the deal and demands return of its $1.5 million*

On July 3, 2019, JTX sent Global Meat a termination letter canceling the transaction for an ownership stake and requesting a full refund of its $1.5 million within 30 days. Xu explained that JTX canceled the deal because of a breakdown in United States/Chinese trade talks and because Global Meat did not respond to JTX's due diligence inquiries.

In September 2019, JTX sent a second letter demanding a refund of the $1.5 million it had advanced.

Global Meat did not return the requested funds.

## II.    Procedural Background

### A.    *Pleadings*

On December 4, 2019, JTX sued Global Meat, Dawood, TD Capital and 13 others on 23 claims. By the operative third amended complaint, JTX had added United and Colony as

defendants, and alleged three claims against United—namely, (1) conversion, (2) theft under Penal Code section 496, and (3) unlawful business practices under California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.).  Specifically, JTX alleged that Dawood used TD Capital, Colony, and United as "instrumentalities . . . to commit the torts and acts alleged herein."

**B.** *Motion for summary judgment*

In July 2022, United moved for summary judgment, arguing, among other things, that it was not liable under any theory because it had returned the money it had borrowed from TD Capital before JTX terminated its deal with Global Meat. After a full round of briefing and a hearing, the trial court on October 5, 2022, granted the motion. The trial court noted that JTX had "concede[d]" that its allegations seeking to hold United liable as Dawood's alter ego—as an example of "reverse veil piercing"—was unsupported by the law, and that JTX had not otherwise raised any disputed issues of fact as to its claims against United.

**C.** *Appeal*

After the trial court entered an amended judgment for United, JTX filed a timely notice of appeal.

## DISCUSSION

JTX argues that the trial court erred in granting summary judgment for United on JTX's claims for (1) conversion, (2) theft under Penal Code section 496, and (3) unlawful business practices.

A defendant is entitled to summary judgment if it can "show that there is no triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).)  The defendant bears the

5

initial burden of showing that the plaintiff cannot prove "one or more elements of [its] cause of action." (*Id.*, subds. (o) & (p)(2).) If met, the "burden shifts" to the plaintiff "to show that a triable issue of one or more material facts exists as to the cause of action." (*Id.*, subd. (p)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.) We independently assess whether summary judgment is appropriate. (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 272.) Our task is to review the trial court's *ruling*, not its *rationale*, so we may affirm on any ground raised by the parties below. (*Atalla v. Rite Aid Corp.* (2023) 89 Cal.App.5th 294, 307 (*Atalla*); *Wilson v. Farmers Ins. Exchange* (2002) 102 Cal.App.4th 1171, 1174, fn. 2.)

Because an unfair business practices claim is necessarily derivative of a plaintiff's other substantive claims (*AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.* (2018) 28 Cal.App.5th 923, 950), we will examine whether summary judgment was appropriately granted for JTX's two substantive claims of conversion and theft under Penal Code section 496.

## I. Analysis

Because ""'"[c]onversion is the wrongful exercise of dominion over the property of another,'"'" a plaintiff asserting a claim for conversion must establish (1) that it owned or had a right to the immediate possession of a specific item of property or a sum certain of money, (2) that the defendant converted that property or money ""'"by a wrongful act or disposition of property rights,"'"'" and (3) that the plaintiff suffered damages or injury. (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1240; *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 395; *Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 284; *Welco Electronics, Inc. v. Mora*

6

(2014) 223 Cal.App.4th 202, 208-209; cf. *Reynolds v. Lerman* (1956) 138 Cal.App.2d 586, 596 [right to immediate possession "not essential" where defendant sells the property and wholly divests the plaintiff of title].)

In *Siry Investment, L.P. v. Farkhondehpour* (2022) 13 Cal.5th 333, our Supreme Court held that Penal Code section 496 could apply—and hence authorizes a civil action for damages—to torts alleging theft.  (*Siry*, at p. 355.)  To assert such a claim, the plaintiff must establish (1) that the defendant obtained the plaintiff's property by theft, "'and concealed or withheld such property'"; (2) that the defendant "'knew the property was obtained by theft at the time they received, withheld, concealed, or aided in concealing or withholding the property from'" the plaintiff; and (3) that the defendant's violation "'caused [the plaintiff] to suffer actual damage, loss or harm.'"  (*Ibid.*)

As a result, both of JTX's substantive claims obligate JTX to prove that it was damaged or injured by United's alleged conversion or theft of its property.

Summary judgment on JTX's conversion and Penal Code section 496 claim was appropriate because—assuming the other elements of JTX's claims do not also fail—it is undisputed that United returned the money it borrowed from TD Capital's account before JTX terminated its revolving line of credit with Global Meat.  Consequently, United's temporary possession of JTX's funds in no way damaged or injured JTX.[1]

---

[1]    We are not precluded from affirming judgment for United on this ground because, although the trial court granted judgment on other grounds (see Code Civ. Proc., § 437c, subd. (m)(2)), the parties thoroughly briefed the issue of lack of

7

## II.    JTX's Arguments

JTX counters with what boils down to six arguments.

First, JTX argues that United is still liable for conversion and for violating Penal Code section 496 because United is little more than Dawood's alter ego, and Dawood wrongfully kept JTX's $1.5 million even after JTX demanded its return. In other words, JTX asserts that we should pierce the corporate veil to hold *United* liable for Dawood's tortious conduct in moving JTX's money between accounts. We have two reasons to reject this argument for "reverse piercing," which seeks to hold a corporation liable for an individual's misconduct rather than to hold an individual liable for a corporation's misconduct. To begin, JTX has seemingly conceded that the concept of "reverse piercing" is inapplicable because it has asserted both in the trial court and on appeal that its opposition to summary judgment does not hinge on that concept. In any event, California law does not allow a corporation to be held liable for an individual's tortious conduct except in the most egregious situations in which the individual has exerted total control over a corporation in a way that renders it little more than an instrumentality of that individual, typically because the individual "disregard[ed] corporate formalities, comingl[ed] money, and transferr[ed] assets without consideration" to the degree that the corporation had no independent existence. (*Postal Instant Press, Inc. v. Kaswa Corp.* (2008) 162 Cal.App.4th 1510, 1518-1519 [rejecting this theory]; *Wise v. DLA Piper LLP (US)* (2013) 220 Cal.App.4th 1180, 1193 [same]; *Reliant Life Shares, LLC v. Cooper* (2023) 90 Cal.App.5th 14, 36-37 [setting forth exception for sham

---

damages on appeal. (See *Altizer v. Coachella Valley Conservation Com.* (2023) 94 Cal.App.5th 749, 753, fn. 4.)

corporations]; see also *Curci Investments, LLC v. Baldwin* (2017) 14 Cal.App.5th 214, 222-223 [allowing reverse corporate veil piercing as to limited liability companies]; *Blizzard Energy, Inc. v. Schaefers* (2021) 71 Cal.App.5th 832, 846-847.) JTX has failed to raise any triable issues of material fact that United was a sham to an extent that permits reverse veil piercing. That is because the chief evidence JTX introduced was the bank account signatory card naming Dawood as United's CEO and proof that United shares a business address mailbox with TD Capital. Dawood's position as a corporate officer is insufficient alone to pierce the veil (*Filet Menu, Inc. v. C.C.L. & G. Inc.* (2000) 79 Cal.App.4th 852, 866), and the use of a common mailbox does not show common control when considered in conjunction with Armani's testimony that United otherwise maintained corporate records, bought and sold property, and conducted business as an independent corporate entity.

Second, JTX argues that Armani's uncontradicted disclaimer of collusion should be discounted because she is not a credible witness. On summary judgment, however, our task is not to evaluate credibility. (Code Civ. Proc., § 437c, subd. (e); *Ayon v. Esquire Deposition Solutions, LLC* (2018) 27 Cal.App.5th 487, 496.) To be sure, a trial court has some discretion to deny summary judgment on credibility grounds when (1) "the only proof of a material fact offered in support of the summary judgment is an affidavit or declaration made by an individual who was the sole witness to that fact," or (2) the "material fact is an individual's state of mind." (Code Civ. Proc., § 437c, subd. (e).) But where, as here, summary judgment turns on the undisputed fact that United returned the money it borrowed (and thus caused JTX no damage or injury), Armani's credibility seems to

9

have no relevance.  At most, Armani's credibility bears on her testimony that she—rather than Dawood—controlled United.  But this is pertinent to the reverse corporate veil piercing argument we have rejected as a matter of law.  Even if we were to ignore JTX's concession below and our prior ruling as to the impropriety of reverse veil piercing, it is unclear that the statutory exception for denying summary judgment on credibility grounds applies to Armani's testimony because her declaration statements were largely repeated in her deposition (to which the exception does not apply) and because of the other corroborative evidence of United's existence as an independent, viable entity.  At a minimum, the trial court did not abuse its discretion in refusing to deny summary judgment on the basis of Armani's alleged lack of credibility.  JTX's citation to *Donchin v. Guerrero* (1995) 34 Cal.App.4th 1832, 1842-1843 is of no avail, for that case involved a witness who admitted the falsity of their prior statements; Armani has made no such admission.

Third, JTX asserts that it *was* damaged or injured because United transferred the funds to Colony rather than back to TD Capital, and hence "laundered" those funds which, JTX asserts, constitutes damage or injury in and of itself.  JTX cites no authority for the proposition that a party who temporarily borrows and returns money has damaged or injured the owner of that money by virtue of returning the money to a different entity than the one from which it borrowed the money; the assumedly unlawful transfers still leave none of the owner's money in the borrower's hands and thus the *borrower* has not damaged or injured the owner.

Fourth, JTX points to numerous disputes in a long and detailed recitation of facts in its briefs.  Suffice it to say, none of

10

those factual disputes are material to the basis upon which we agree summary judgment is appropriate—namely, that JTX was not injured or damaged by United's conduct.

Fifth, JTX argues that the trial court's rationale is subject to criticism. This is irrelevant because, as noted above, our task is to review the court's ruling, not its reasoning. (*Atalla, supra,* 89 Cal.App.5th at p. 307.)

Sixth and finally, JTX argues that the trial court appears to have changed its mind about the propriety of granting summary judgment in this case. Specifically, JTX asks us to augment the record to include postappeal proceedings in JTX's litigation against other defendants in which the trial court denied summary judgment for Colony and simultaneously indicated an intent to reconsider its summary judgment ruling at issue in this appeal; the trial court ultimately declined to do so after acknowledging that the pending appeal divested it of jurisdiction to reconsider its prior ruling. We deny JTX's motion to augment the record because the trial court's subsequent second thoughts are irrelevant. Our review is de novo, and we have independently concluded that summary judgment is appropriate—and on a basis ostensibly unique to United (namely, that it returned the money it borrowed for three weeks). We see no reason to grant the motion to augment and overturn the summary judgment ruling just so the trial court can make a different ruling that we have concluded here would be incorrect.

## DISPOSITION

The judgment is affirmed. United is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

11

_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST